**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)                         *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMANDA BELL,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **MORNINGSIDE MANAGEMENT LLC** | : | |
| **d/b/a MORNINGSIDE HOUSE SENIOR** | : | |
| **LIVING** | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Amanda Bell (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Morningside Management LLC d/b/a Morningside House Senior Living (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Coatesville, PA.

3. Upon information and belief, Morningside Management LLC d/b/a Morningside House Senior Living is a senior living provider with a location at 200 Sunrise Boulevard, Exton,

PA 19341 and with corporate headquarters located at 128 Old Town Road, Suite C, Setauket, NY 11733.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

### **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the ADA and the PHRA.

13. On or about October 28, 2024, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2025-00771 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated April 17, 2026.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and more than one year after filing, but within two (2) years of the issuance of the Right to Sue in this matter, as it relates to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On or about October 2, 2023, Defendant hired Plaintiff in the position of Direct or Memory Care.

21. Plaintiff was well qualified for her position and performed well.

22. On or about January 12, 2024, Defendant promoted Plaintiff to the position of Senior Director.

23. Plaintiff was well qualified for her position and performed well.

24. On or about April 29, 2024, Defendant transferred Plaintiff from its Collegeville, PA location to its Exton, PA location.

### A COWORKER SCREAMED AT PLAINTIFF FOLLOWING HER TERMINATION

25. On or about June 17, 2024, Defendant terminated Aja Stalter, Assistant Director of Health & Wellness

26. While Stalter was leaving Defendant, she screamed at Plaintiff in a threatening manner.

27. Stalter yelled at Plaintiff that it was unbelievable that Plaintiff "still has a job, even though she doesn't do anything," or words to that effect.

28. Thereafter, Stalter broke the front door of Defendant, right in front of Plaintiff.

### PLAINTIFF NOTIFIED DEFENDANT OF HER DISABILITIES

29. Immediately thereafter, Plaintiff informed Kellee Silhan, then-Executive Director, that she suffered from Generalized Anxiety Disorder ("GAD") and bipolar disorder.

30. GAD and bipolar disorder are serious health conditions that are considered to be disabilities under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

31. The major life activities affected by GAD and bipolar disorder include, but are not limited to, thinking, concentrating, sleeping, regulating mood and emotions and neurological and brain function.

32. Plaintiff informed Silhan that the incident with Stalter had exacerbated her disability symptoms.

33. Silhan assured Plaintiff that Stalter would not be eligible for rehire at Defendant.

34. Shortly after this, Silhan left Defendant.

## <u>MANAGEMENT INFORMED PLAINTIFF THAT STALTER WOULD BE RETURNING TO DEFENDANT AND REQUIRED HER TO JOIN THE INITIAL MEETING</u>

35. On or about June 25, 2024, management informed Plaintiff that Stalter would be returning to Defendant.

36. Management stated that Plaintiff would have to be part of the initial meeting with Stalter upon her return to determine her rehire eligibility and discuss the prior incident the next day, on or about June 26, 2024.

## <u>PLAINTIFF REQUESTED THE REASONABLE ACCOMMODATION TO NOT ATTEND THE MEETING WITH STALTER</u>

37. Plaintiff requested a reasonable medical accommodation through Gianna LaRosa, Corporate Director of Human Resources, to not attend this meeting, as it would heighten Plaintiff's disability symptoms.

38. LaRosa pressured Plaintiff to reveal her exact diagnoses, despite the fact that Plaintiff had already revealed the extent to which her mental health disabilities would be affected by the meeting and the prior incident.

## LAROSA INFORMED PLAINTIFF THAT SHE WAS REQUIRED TO PROVIDE A NOTE FROM HER MEDICAL PROVIDER AND REFUSED TO PROVIDE ANY TEMPORARY ACCOMMODATIONS

39. LaRosa explained Plaintiff would need to have an official letter from her medical provider explaining her disabilities and need for an accommodation.

40. Plaintiff explained that she could get a letter from her medical provider, but it could take her medical provider up to ten (10) business days to provide this letter to Defendant.

41. LaRosa informed Plaintiff that she was ineligible for any temporary medical accommodations in the meantime.

## LAROSA DENIED PLAINTIFF'S ACCOMMODATION REQUEST

42. LaRosa ultimately denied the accommodation request, stating that Plaintiff must be present at the meeting.

## PLAINTIFF REQUESTED A SECOND REASONABLE ACCOMMODATION

43. Thereafter, on or about June 27, 2024, Plaintiff requested a second reasonable medical accommodation to not work face-to-face with Stalter at Defendant.

44. Importantly, Defendant has four (4) other locations, and Plaintiff expressed that she was agreeable with transferring to a new location if needed to allow for this accommodation request to be granted.

45. LaRosa asked Plaintiff if she could not do her job.

46. Plaintiff informed LaRosa that she could still do her job.

6

47. Plaintiff continued to explain that her disability symptoms would be exacerbated if she worked with Stalter since Stalter created a threatening and hostile work environment for Plaintiff.

48. Plaintiff requested to work from home until Defendant granted this accommodation request.

49. This would not have posed an undue hardship on Defendant as Plaintiff had worked from home in her role in the past.

## DEFENDANT LOCKED PLAINTIFF OUT OF ITS SYSTEM

50. After Plaintiff made this second accommodation request to LaRosa, Defendant locked Plaintiff out of all its computer systems.

51. When Plaintiff attempted to work remotely starting on or about July 2, 2024, she could not access any of Defendant's network systems.

52. Plaintiff called IT.

53. IT confirmed that Plaintiff was locked out of Defendant's system by management.

## LAROSA FORCED PLAINTIFF TO UTILIZE PAID-TIME OFF UNTIL A DECISION WAS MADE ON PLAINTIFF'S ACCOMMODATION REQUEST

54. Plaintiff then emailed LaRosa to ask why she had been locked out of Defendant's system.

55. LaRosa stated Plaintiff's position was not a remote position.

56. Plaintiff stated she was only waiting for her accommodation request to be approved.

57. LaRosa stated that Plaintiff was required to use paid-time off ("PTO") until her accommodation request was sorted out, or words to that effect.

58. Plaintiff continued to take PTO throughout early July 2024.

## LAROSA REQUIRED PLAINTIFF TO COMPLETE ACCOMMODATION PAPERWORK WITHIN FIVE (5) DAYS

59. During this time, LaRosa gave Plaintiff a five (5) day window to explain her need for an accommodation request.

60. Plaintiff completed all of the requested forms.

## LAROSA INSTRUCTED PLAINTIFF TO TAKE A MEDICAL LEAVE OF ABSENCE, DESPITE PLAINTIFF'S ABILITY AND WILLINGNESS TO WORK

61. Shortly after, LaRosa informed Plaintiff that she would need to take short-term disability ("STD") leave.

62. Plaintiff explained again that she could still do her job, but her disability symptoms would be exacerbated if she worked with Stalter given the prior incident.

## LAROSA REMOVED PLAINTIFF FROM THE SCHEDULE

63. Thereafter, LaRosa began to remove Plaintiff from Defendant's schedule.

## LAROSA DENIED PLAINTIFF'S SECOND REASONABLE ACCOMMODATION REQUEST

64. On or about July 18, 2024, LaRosa flatly denied Plaintiff's second reasonable accommodation request.

## LAROSA ATTEMPTED TO FORCE PLAINTIFF TO MEET WITH MANAGEMENT

65. Nonetheless, LaRosa attempted to force Plaintiff to meet with her and management without allowing her to have an attorney present.

## PLAINTIFF FILED A COMPLAINT OF DISABILITY DISCRIMINATION

66. On July 24, 2024, Plaintiff filed a complaint of disability discrimination and the hostile work environment created by Stalter to Jen Miller, Regional Director.

**DEFENDANT INFORMED PLAINTIFF THAT HER COMPLAINT WAS FOUND TO BE UNSUBSTANTIATED**

67. On August 1, 2024, LaRosa sent Plaintiff a letter that Defendant had conducted an investigation and that her claims were unsubstantiated.

**DEFENDANT TERMINATED PLAINTIFF**

68. In addition, on August 1, 2024, LaRosa sent Plaintiff a termination letter effective July 31, 2024.

69. LaRosa's letter stated that it considered Plaintiff to have resigned due to alleged job abandonment.

70. Plaintiff did not abandon her job.

71. Defendant terminated Plaintiff.

72. Defendant discriminated against Plaintiff due to her disabilities, denied her a reasonable accommodation and retaliated against her for requesting a reasonable accommodation in violation of the ADA and the PHRA.

73. Defendant's conduct was willful or with reckless disregard to Plaintiff's Federal Statutory Rights.

**COUNT I – DISABILITY DISCRIMINATION
AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

74. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

75. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

9

76. Plaintiff was qualified to perform the job.

77. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

78. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

79. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

80. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

81. The purported reason for Defendant's decision is pretextual.

82. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

83. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

84. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

85. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

86. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

87. Plaintiff is a "qualified individual with a disability" as that term is defined under the

PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

88. Plaintiff was qualified to perform the job.

89. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

90. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

91. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

92. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

93. The purported reason for Defendant's decision is pretextual.

94. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

95. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

96. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

11

**COUNT III – RETALIATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

97. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

98. Plaintiff engaged in activity protected by the ADA.

99. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

100. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

101. Defendant's conduct was willful or with reckless disregard to Plaintiff's Federal Statutory Rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT IV – RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

102. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

103. Plaintiff engaged in activity protected by the PHRA.

104. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

105. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Amanda Bell, requests that the Court grant her the following relief against Defendant:

(a)     Damages for past and future monetary losses as a result of Defendant's unlawful employment practices;

(b)     Compensatory damages for, *inter alia*, mental anguish, humiliation, and emotional pain and suffering as well as any other expenses incurred by Plaintiff due to Defendant's unlawful employment practices;

(c)     Punitive damages;

(d)     Liquidated damages;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the PHRA.

(j)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in,  training  programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

**JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

13

## **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: July 16, 2026              **By:**  ***/s/David M. Koller***
                                  David M. Koller, Esquire (Pa 90119)
                                  Jordan D. Santo, Esquire (Pa 320573)
                                  2043 Locust Street, Suite 1B
                                  Philadelphia, PA 19103
                                  215-545-8917
                                  davidk@kollerlawfirm.com
                                  jordans@kollerlawfirm.com

                                  *Counsel for Plaintiff*